UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MANUEL CAZARES,                          )
                                         )
            Petitioner,                  )
                                         )
      vs.                                )          Case No. 4:15CV875 RLW
                                         )
JAY CASSADY,                             )
                                         )
            Respondent.                  )

## MEMORANDUM AND ORDER

This matter is before the Court on Manuel Cazares's Petition under 28 U.S.C. §2254 for

Writ of Habeas Corpus By a Person in State Custody (ECF No. 1 ("Motion")).  Because this

Court has determined that Cazares's claims are inadequate on their face and the record

affirmatively refutes the factual assertions upon which Cazares's claims are based, this Court

decides this matter without an evidentiary hearing.[1]

## BACKGROUND

In 2011, a St. Charles County Circuit Court jury convicted Cazares of two counts of

second degree murder and one count of armed criminal action.  The court sentenced Cazares to

consecutive terms of life imprisonment for each murder charge, and twenty-five years for armed

criminal action.  In his Petition, Cazares raises four claims for habeas relief: 1) that the trial

---

[1]"A district court does not err in dismissing a movant's motion without a hearing if (1) the
movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the
allegations cannot be accepted as true because they are contradicted by the record, inherently
incredible, or conclusions rather than statements of fact.'"  *Buster v. U.S.*, 447 F.3d 1130, 1132
(8th Cir. 2006) (quoting *Sanders v. U.S.*, 341 F.3d 720, 722 (8th Cir. 2003)(citation and quotation
marks omitted);  *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (in a §2254 case,
holding that "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . .
contentions that in the face of the record are wholly incredible.").

˅ 1 ˅

court erred in admitting photographs of the crime scene and autopsy photographs of the victims; 2) that the trial court erred in permitting the prosecutor to require Cazares to demonstrate how he stabbed the victims on cross-examination; 3) that trial counsel was ineffective for failing to compel the presence of Jennifer Breshears, a "material witness" whose testimony Cazares claims would have refuted the eyewitness testimony of the two state witnesses who claimed to have seen Cazares in the same location as the victims on the night of the murders; and 4) that counsel was ineffective for failing to raise diminished capacity as a defense at trial.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. §2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). "[I]n a §2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). "'A state court's decision is contrary to ... clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision ... and nevertheless arrives at a [different] result.'" *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that §2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. A State court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. A State court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

## FACTS

This case was summarized by the Missouri Court of Appeals as follows:

> Amanda Thomas was Defendant's former girlfriend and the mother of Defendant's child. One night in 2009, Ms. Thomas went to several bars in Hannibal. At one of the bars, Ms. Thomas encountered a former classmate, Carl Patrick Epley. When the bars closed, Ms. Thomas and Mr. Epley went to Ms. Thomas's home, where they planned to spend the night together. Defendant had been expecting Ms. Thomas to telephone him that night, but she never called him. The next morning, Defendant went to Ms. Thomas's home and knocked on the door. When no one answered, Defendant entered the home. Defendant walked into the bedroom and saw Ms. Thomas in bed with Mr. Epley. Defendant went to the kitchen, retrieved a knife, and returned to the bedroom. Defendant "took the covers off them, . . . saw that they were naked and . . . started to stab" Mr. Epley. After stabbing them, Defendant felt "a rage inside of [himself] that [he] couldn't control." Ms. Thomas died of a fatal stab wound to the heart, and Mr. Epley died of exsanguination resulting from seven stab wounds to the chest.
>
> Defendant drove to the police station that morning and instructed an officer to arrest him. Defendant stated that he had killed two people by stabbing them with a knife at Ms. Thomas's home. Police officers went to Ms. Thomas's home and discovered the two bodies and a bloody knife in the trash.

ECF No. 14-7, *State v. Cazares*, No. ED97189 (Mo. Ct. App. Nov. 27, 2012).

The jury found Cazares guilty of two counts of second-degree murder and one count of armed criminal action, and the court sentenced him to consecutive prison terms of life, life, and twenty-five years in prison, respectively. The Missouri Court of Appeals affirmed Cazares's convictions on appeal.

Cazares timely filed a Rule 29.15 motion for post-conviction relief, which the motion court denied after an evidentiary hearing. On appeal, the Missouri Court of Appeals affirmed the judgment of the motion court.

## DISCUSSION

### I. CLAIMS I AND II

In his first and second claims, Cazares raises claims of evidentiary error by the trial court. In claim one, he asserts that his due process rights were violated when the trial court admitted photographs of the crime scene and the victims' autopsies. In claims two, Cazares asserts that the trial court should not have allowed the prosecutor to require Cazares to demonstrate how he stabbed the victims during the State's cross-examination.

Regarding the admission of the photographs, Cazares objects to the admission of seventeen photographs on the grounds that they were inflammatory and prejudicial. Of the seventeen photographs Cazares challenges, two of the photographs are of the crime scene, with one depicting Mr. Epley's body as the police discovered it and the other showing the pools of blood remaining after the officers removed his body from the bed. *See* ECF No. 14-7, *State v. Cazares*, No. ED97189 (Mo. Ct. App. Nov. 27, 2012). The State introduced the crime scene photographs during the testimony of the police officer who collected evidence at the scene. The State also sought to admit fifteen photographs taken during the autopsies of both bodies and revealing multiple stab wounds on the bodies, primarily in the chest area. The State introduced the autopsy photographs during the testimony of the pathologist who performed the autopsies.

The Missouri Court of Appeals summarized the exchange between the State and Cazares

regarding the demonstrative request:

> During the State's cross-examination of Defendant, the prosecutor asked
> Defendant to hold an object and "pretend this [was] the knife." Defendant
> objected on the ground that he had already testified that he did not remember how
> he held the knife or how many times he stabbed the victims. The trial court
> overruled the Defendant's objection. The prosecutor asked Defendant to
> demonstrate to the jury how he stabbed Ms. Thomas and Mr. Epley. Defendant
> responded, "I can't tell you that because I don't remember the way I was holding
> the knife."

ECF No. 14-7, *State v. Cazares*, No. ED97189 (Mo. Ct. App. Nov. 27, 2012).

The Missouri Court of Appeals considered Cazares's argument and denied post-conviction

relief holding:

> In his first point on appeal, Defendant asserts that the trial court erred in admitting
> seventeen crime scene and autopsy photographs. Specifically, Defendant claims
> that the photographs did not tend to prove any material issue because Defendant
> admitted he stabbed the victims to death and that the photographs' prejudicial
> effect outweighed any probative value.
>
> The State counters that the photographs were relevant to show the extent of the
> victims' injuries and to show that Defendant was guilty of second-degree murder
> rather than one of the lesser included offenses.
>
> A trial court has broad discretion in the admission of photographs. *State v. Strong*,
> 142 S.W.3d 702, 715 (Mo. banc. 2004). This court will not overturn the trial
> court's decision absent an abuse of discretion. *Id.* "[E]ven if a photograph is
> inflammatory, it should not be excluded if it is relevant." *State v. Johnson*, 244
> S.W.3d 144, 161 (Mo. banc 2008). "Generally, if photographs are gruesome , it is
> because the crime itself was gruesome." *Id.* Gruesome photographs are
> admissible if they: "(1) show the nature and location of wounds; (2) enable jurors to
> better understand the testimony at trial; and (3) aid in establishing an element of the
> State's case." *Id.* at 161-62.
>
> Here, the crime scene photographs showed Mr. Epley's stab wounds and enabled
> jurors to better understand the police officer's testimony describing how he
> discovered Mr. Epley's body in pools of blood on the bed. *See State v. Rios*, 234
> S.W.3d 412, 427 (Mo. App. W.D. 2007). Likewise, the autopsy photographs
> showed the nature, location, and number of Mr. Epley's and Ms. Thomas's wounds
> and assisted the jurors in understanding the testimony of the pathologist regarding
> the nature and location of the wounds. *See State v. Dorsey*, 318 S.W.3d 648,
> 657-58 (Mo. banc 2010).

Additionally, the photographs tended to establish Defendant's state of mind, which was an element of the State's case for the two counts of second-degree murder. "A person commits the crime of murder in the second degree if he . . . [k]nowingly causes the death of another person . . . ." Mo. Rev. Stat. §562.016.3. A person acts "purposefully" when "it is his conscious object to cause that result." Mo. Rev. Stat. §562.016.2.

The trial court also instructed the jury on three lesser-included offenses of second-degree murder: voluntary manslaughter, first-degree involuntary manslaughter, and second-degree involuntary manslaughter. *See* Mo. Rev. Stat. §565.025.2. "A person commits the crime of voluntary manslaughter if he . . . [c]auses the death of another person under circumstances that would constitute murder in the second degree . . . except that he caused the death under the influence of sudden passion arising from adequate cause." Mo. Rev. Stat. §565.023.1. "A person commits the crime of involuntary manslaughter in the first degree if he . . . [r]ecklessly causes the death of another person . . . ." Mo. Rev. Stat. §565.024.1(1). "A person commits the crime of involuntary manslaughter in the second degree if he acts with criminal negligence to cause the death of any person." Mo. Rev. Stat. §565.024.3. Thus, although Defendant admitted he caused Ms. Thomas's and Mr. Epley's deaths by stabbing them, the jury might have to determine whether Defendant acted: (1) knowingly or with the purpose of causing serious physical injury (second degree murder); (2) under the influence with sudden passion (voluntary manslaughter); (3) recklessly (first-degree involuntary manslaughter); or (4) with criminal negligence (second-degree manslaughter).

The crime scene photographs showed Mr. Epley's body as the police discovered it and the pools of blood remaining after the officers removed his body from the bed. The autopsy photographs showed multiple stab wounds on both bodies, primarily in the chest area. Because the photographs showed that Defendant stabbed the victims violently in the chest multiple times, they aided in establishing the State's case that Defendant caused the victims' deaths knowingly or with the purpose of causing serious physical injury. *See, e.g., Dorsey*, 318 S.W. 3d at 657-58 (holding that the trial court properly admitted a photograph showing the position of the victims in their bed because it assisted the jury in determining the defendant's state of mind); *State v. Davis*, 107 S.W. 3d 410, 422-23 (Mo. App. W.D. 2003) (holding that the trial court properly admitted a photograph showing the deceased victim hanging from a vehicle because it was "highly probative" to whether the defendant knowingly caused the victim's death by dragging the victim behind a vehicle). Thus, although gruesome, the photographs were admissible.

Defendant argues that any probative value of the photographs was outweighed by the fact that the photographs were needlessly inflammatory. In support of this argument, Defendant cites *State v. Robinson*, 328 S.W.2d 667 (Mo. 1959) and *State v. Floyd*, 360 S.W.2d 630 (Mo. 1962). Both cases are distinguishable.

In both *Robinson* and *Floyd*, the trial courts permitted the State to introduce crime scene photographs of the victims' bodies. *Robinson*, 328 S.W.2d at 671; *Floyd*, 360 S.W.2d at 632.

On appeal, the *Robinson* Court concluded that the photographs "[did] not add to or detract from the State's or defendant's theory" because they did not demonstrate whether the victim fell and hit his head as the defendant alleged or the defendant struck the fatal blow as the State argued. 328 S.W.2d at 668-69, 671. The *Floyd* Court explained did not need or offer the photograph "to identify the victim, to show the nature and location of the injury, to illustrate or prove the character of the weapon, the surrounding circumstances, to determine the degree of the crime, or to show the cause of death." 360 S.W.2d at 633. Instead, the prosecutor sought to introduce the photograph to show "how badly the body [was] decomposed." *Id.* at 632. In both cases, the Court held that the trial court should have excluded the photographs because they were not needed or offered for a proper purpose. *Robinson*, 328 S.W.2d at 671; *Floyd*, 360 S.W.2d at 633.

Here, in contrast to *Robinson* and *Floyd*, the State offered the photographs for proper purposes. Specifically, the State offered the photographs to show the nature and location of Ms. Thomas's and Mr. Epley's stab wounds, support the testimony of the police officer and the pathologist, and prove the State's theory that Defendant committed second-degree murder rather than one of the lesser-included offenses. Point denied.

ECF No. 14-7, *State v. Cazares*, No. ED97189 (Mo. Ct. App. Nov. 27, 2012).

In Cazares's second claim for habeas relief, the Missouri Court of Appeals found his claim

that the State compelled an improper demonstration during cross-examination was unsupported by

the record:

In his second point on appeal, Defendant argues that the trial court erred in allowing the prosecutor to require Defendant to demonstrate to the jury how he stabbed the victims. More specifically, Defendant contends that the prejudicial effect of the demonstration outweighed its probative value because Defendant had already testified that he did not remember how he held the knife or how many times he stabbed the victims.

"Demonstrative evidence is admissible if it establishes a fact at issue, throws light on the issue, or aids the jury in any way in arriving at the correct verdict." *State v. Harrison*, 213 S.W.3d 58, 76 (Mo. App. S.D. 2006) (quotation omitted). "The trial court is vested with broad discretion in admitting or rejecting demonstrative evidence, due to its superior vantage point for balancing the probative value of such evidence against its prejudicial effect." *Id.* (quotation omitted).

The record reveals that Defendant did not demonstrate anything to the jury. The prosecutor asked Defendant to show the jury how he stabbed Ms. Thomas and Mr.

Epley. Defendant responded, "I can't tell you that because I don't remember the way I was holding the knife." Nothing in the record suggests that Defendant actually reenacted the stabbing. Nonetheless, we address Defendant's argument that the alleged demonstration was improper.

Defendant argues that the trial court should not have permitted the demonstration because the circumstances of the demonstration were not similar to what occurred at Ms. Thomas's home. To support this argument, Defendant relied on *State v. Grant*, 810 S.W.2d 591 (Mo. App. S.D. 1991). *Grant* is inapposite. There, the trial court allowed the prosecutor to use an unloaded pistol not admitted into evidence to demonstrate how the defendant pointed a gun at a robbery victim's head and how the victim could see bullets in the chamber. 810 S.W.2d at 592.

However, there was no evidence that the pistol used in the demonstration was similar to the gun used in the robbery or that bullets in the chamber would have been visible if the pistol had been loaded. *Id.* On appeal, the *Grant* court held that the demonstration was improper because the prosecutor conducted the demonstration using a weapon unrelated to the charged offense. *Id.*

The court explained that "[l]ethal weapons unrelated to the offense for which an accused is charged have prejudice seldom attached to other demonstrative evidence." *Id.*

Here, the prosecutor did not ask Defendant to use a knife to demonstrate how he stabbed the victim. Instead, the prosecutor requested that Defendant hold an object and "pretend this [was] the knife." The record does not reveal what the object was, but Defendant does not assert that it was a knife or any other weapon. Thus, unlike in *Grant*, there is no evidence that the State sought to use a lethal weapon unrelated to the offense in its putative demonstration. Point denied.

ECF No. 14-7, *State v. Cazares*, No. ED97189 (Mo. Ct. App. Nov. 27, 2012).

"Ordinarily the admissibility of evidence at trial is a matter of state law and will not form the basis for federal habeas relief." *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988) (citing *Manning-El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied*, 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984)). "A federal court may, however, grant habeas relief when a state court's evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process." *Turner*, 845 F.2d at 169. To carry the burden of showing that an evidentiary error meritorious of federal habeas relief, the petitioner must show "that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire

trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (internal citation omitted). To carry that burden, "the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." *Anderson*, 44 F.3d at 679.

The Court holds that the Missouri Court of Appeals properly applied the law to the facts of this case to determine that claims one and two lacked merit. Cazares failed to carry his burden to show that that the admission of the photographs and the request for a demonstration as to the knife caused the proceedings to be fundamentally unfair. *Anderson*, 44 F.3d at 679. Cazares has not presented any evidence that the jury's determination would have been different absent the admission (or request for admission) of this evidence. In fact, the Court holds that the overwhelming evidence supported Cazares's conviction, particularly based upon his admission to the crimes and his preexisting knowledge of Thomas's whereabouts the night before. Therefore, the Court holds that Cazares has not shown how the state court's rejection of claims one and two was contrary to federal law nor based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, the Court defers to the state court's adjudication and denies Cazares's first and second claims for relief.

## II. Claim III

In his third claim, Cazares alleges that trial counsel was ineffective for failing to compel the presence of Jennifer Breshears to testify in his defense. Cazares claims that Breshears "would have provided testimony to refute two state witnesses' claims that they saw Petitioner the night before the murders at the same location as the two victims." (Petition at 5). The Missouri Court of Appeals rejected this claim on post-conviction appeal:

On a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence first, that counsel's performance was deficient, and second, that the movant was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]here is a strong presumption that counsel's conduct was reasonable and effective." *Gill v. State*, 300 S.W.3d 225, 232 (Mo. banc 2009). "Strategic choices made after a through plausible investigation of law and the facts relevant to plausible opinions are virtually unchallengeable." *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996) (quoting *Strickland*, 466 U.S. at 690-91).

Here, in light of the face that Movant had confessed to killing the victims, Counsel's strategy was "that it was heat of passion type of case, thereby eliciting and adducing evidence that would allow us to get jury instructions of lesser included offenses down from murder in the second degree down to voluntary manslaughter, involuntary manslaughter, [and] . . . The State presented evidence that Movant had seen Victim out at bars with the man the night before Movant killed them. Counsel's strategy was to refute this evidence with testimony that Movant was home all night. He had been living with his cousin and Breshears, who was Movant's cousin's fiancée. Breshears was going to testify that Movant was home the whole evening. Counsel planned to argue this meant that Movant did not know where Victim was the night before, and thus was not home seething and upset the night before he killed her.

Counsel subpoenaed Breshears to appear for trial. He also spoke with Breshears before trial and confirmed she would be there to testify. Breshears was not present on the morning Counsel planned to call her there as a witness. Counsel asked the trial court for a three-hour delay to locate Breshears, and the court told counsel to proceed with other evidence. Counsel had Movant testify first, and in the meantime, Counsel's investigator attempted to locate Breshears.

During Movant's testimony, he said that on the night before the murders he received a phone call in which someone told him that Victim was out at bars. This upset Movant because Victim had lied to him about where he was going to be. He was already planning to go to her apartment the next morning because they were going to get back together.

At the end of Movant's testimony, Breshears still was not present, and Counsel asked the trial court to hold her in contempt. However, in light of Movant's testimony about the phone call, Counsel determined that Breshears's testimony was no longer valuable because whether Movant was at the bars or at home, he knew Victim was out at the bars. Counsel also testified at the hearing that Breshears would not have provided a complete defense, but only would have refuted the State's evidence that Movant saw Victim out and became upset the night before he killed her.

We agree with the motion court that Movant failed to overcome the presumption that Counsel provided effective assistance and made decisions based on reasonable trial strategy. First, according to Counsel's testimony at the hearing,

he made a reasonable and strategic decision based on the testimony of Movant at trial. It was reasonable for Counsel to conclude that Breshears's testimony had diminished value after Movant admitted he knew Victim was out at bars the night before he killed her. Additionally, Counsel determined this was true regardless of whether Movant knew Victim was out with another man or not. At the very least, Movant had admitted being angry because Victim lied to him.

Second, counsel will not be found ineffective for failure to call a witness where counsel took reasonable steps to do so. *See Rotellini v. State*, 77 S.W.3d 632, 635-36 (Mo. App. E.D. 2002) (where movant's counsel subpoenaed witness, counsel's investigator spoke to witness day before trial, requested day's continuance, sought to find witness during continuance, and was unaware witness was in jail; counsel was not ineffective for failing to request writ of body attachment or additional continuance).

Here, Counsel subpoenaed Breshears, confirmed before trial she would appear, requested a continuance, and had his investigator spend time the morning of trial looking for her. "Counsel should not be deemed ineffective for failing to be clairvoyant concerning [a witness's] whereabouts." *Id.* at 636. Moreover, Movant failed to show a reasonable probability the trial court would have granted Counsel's request for a writ of body attachment even if Counsel had made it. The decision to grant such a request is a matter of discretion for the trial court. *State v. Reed*, 853 S.W.2d 452, 454 (Mo. App. E.D. 1993). The motion court did not clearly err in finding that Breshears's testimony did not establish a complete defense, and thus the trial court could have permissibly denied any request for a writ of body attachment. *See State v. Moore*, 359 S.W.3d 520, 524 (Mo. App. E.D. 2012) (court did not abuse its discretion in denying request for writ of body attachment where witness would not have provided complete defense).

Here, the inference from Breshears's testimony Counsel sought to draw was that Movant had no prior knowledge Victim was out the night before, and thus could not have planned her murder. Movant undermined this inference with his own testimony, and, there was no reasonable probability the trial court would have granted the request for a writ of body attachment under the circumstances.

The motion court did not clearly err in finding that Counsel was not ineffective and that Movant was not prejudiced by Counsel's failure to request a writ of body attachment. Point denied.

ECF No. 14-7, *State v. Cazares*, No. ED97189 (Mo. Ct. App. Nov. 27, 2012).

To support an ineffective assistance of counsel claim, a convicted movant must first show

"that his counsel's performance was deficient, and that he suffered prejudice as a result." *Paul*

*v. United States*, 534 F.3d 832, 836 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S.

668, 687 (1984)). The movant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Malcom v. Houston*, 518 F.3d 624, 626 (8th Cir. 2008). A reasonable probability is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (citations omitted).

The Court holds that the opinion of the Missouri Court of Appeals did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or result in a decision that was based on an unreasonable determination of the facts in light of the evidence. The Court of Appeals determined that Cazares was not prejudiced by his trial counsel's performance because Breshears's testimony would not have been helpful to Cazares. The evidence before the Court of Appeals demonstrated that Breshears's testimony would not have supported Cazares's potential defense that he was unaware that Thomas had been out the night before at the bars and, as a result, that Cazares could not have planned his attack. Rather, Cazares admitted on the stand that he knew Thomas had been out the night before. Consequently, Breshears's planned testimony that Cazares was home the night before the killings would not have supported Cazares's attempt to obtain a lesser sentence and he was not prejudiced by his counsel's failure to obtain Breshears's testimony. The Court holds that Cazares provided no material that

demonstrates that the Missouri Court of Appeals' decision was unreasonable. Therefore, the Court holds that Cazares's third claim for federal habeas relief is denied.

### III.  Claim Four

In his fourth claim, Cazares alleges that trial counsel was ineffective for failing to raise a claim of diminished capacity. This claim, however, is barred based upon procedural default. "'Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules.'" *Arnold v. Dormire*, 675 F.3d 1082, 1086–87 (8th Cir. 2012) (quoting *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009)). Under Missouri law, "'a claim must be presented at each step of the judicial process in order to avoid default.'" *Arnold*, 675 F.3d at 1087 (quoting *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980) (internal citation omitted)). Cazares failed to raise this fourth claim during his post-conviction proceedings in state court. This claim, therefore, is procedurally defaulted and is denied on this basis.

Even if Cazares's fourth claim were not procedurally barred, the Court holds that this claim also fails on its merits. The Court notes that trial counsel argued that Cazares was "out of his mind" due to the rage he felt towards his victims. *See* Memorandum in Support of Habeas Petition, ECF No. 1-1 at 6. The Court finds no basis in the record for trial counsel to have argued that Cazares was not guilty due to a mental disease or defect under Mo. Rev. Stat. §552.030. *See* Mo. Rev. Stat. §552.030.1 ("A person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct."). Having found no facts or evidence suggesting a legal basis for asserting this defense, the Court denies habeas relief on this point.

Accordingly,

**IT IS HEREBY ORDERED** that Manuel Cazares's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

A judgment dismissing this case is filed herewith.

Dated this 19th day of June, 2018.

Ronnie L. White

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE